# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Philip G. Reinhard | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 50324 | DATE | 3/15/2001 |
| CASE TITLE | Estate of Allen vs. City of Rockford, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' and plaintiff's cross-motions for summary judgment

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated on the attached Memorandum Opinion and Order, plaintiff's motion for partial summary judgment as to Count I is denied but the motion for summary judgment brought by defendants City of Rockford, Taylor, and Scott is granted as to Counts I and II. The remainder of these parties' motions for summary judgment are denied as moot, as is the motion for summary judgment brought by defendants Rockford Health System, et al. This case is dismissed in its entirety, Counts I and II being dismissed with prejudice and Counts III - V without prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

THE ESTATE OF DARLENE ALLEN, )
Jim Moriarty, acting as Special )
Administrator, )
)
)
Plaintiff, )
)
v. ) No. 99 C 50324
)
CITY OF ROCKFORD, a municipal )
corporation of the State of Illinois, )
CHERYL TAYLOR and BRUCE SCOTT, in )
their individual and official )
capacities as police officers for the )
City of Rockford, ROCKFORD HEALTH )
SYSTEMS, INC., an Illinois corporation, )
d/b/a Rockford Memorial Hospital, )
ARTHUR F. PROUST, DEWAYNE NEAL, LORRI )
J. LEE, EMIL K. MOSNY, and VALERI D. )
SMITH, individually and as employees )
of Rockford Health Systems, Inc., )
)
Defendants. )

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

The original plaintiff in this case, Darlene Allen,[1] filed a five-count second-amended complaint against defendants, City of Rockford ("City"), Cheryl Taylor and Bruce Scott, in their official and individual capacities as police officers for the City (the City, Taylor, and Scott will collectively be referred

---

[1] On September 12, 2001, a suggestion of Allen's death on September 3, 2001 was filed under Federal Rule of Civil Procedure 25. Allen's estate has since been substituted as the named plaintiff, pursuant to Rule 25(a)(1). For convenience' sake, the court will nevertheless refer to both Allen and her estate as, simply, "Allen."

to as "the City defendants"), Rockford Health Systems, Inc., d/b/a Rockford Memorial Hospital ("Hospital"), Arthur F. Proust, Dewayne Neal, Lorri J. Lee, Emil K. Mosny, and Valeri D. Smith (the Hospital and the remaining five individual defendants will collectively be referred to as "the Hospital defendants"). Count I is a claim brought under 42 U.S.C. § 1983 against the City defendants for an alleged violation of Allen's Fourteenth Amendment due process rights, Count II seeks attorney's fees under 42 U.S.C. § 1988 if Allen is successful on Count I, and Counts III - V are various state tort claims against some or all defendants. The court has original jurisdiction over Counts I and II under 28 U.S.C. § 1331 and supplemental jurisdiction over the remaining counts under 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391(b). Before the court are separate motions for summary judgment, filed pursuant to Federal Rule of Civil Procedure 56, by the City defendants and the Hospital defendants, and a cross-motion for partial summary judgment by Allen. Because they are dispositive of the other motions, this opinion will primarily focus on the City defendants' motion, and Allen's cross-motion, as to Count I.

## II. **FACTS**

On July 6, 1999, Rockford police officer Kevin Nordberg pulled Allen over based on a report that a car matching her car's description was previously seen driving on the wrong side of the road. (City LR 56.1(a) ¶¶ 5, 8-10) When he approached Allen, he

noticed she was shaking uncontrollably, her speech was slurred, and her eyes were "glassy." (Id. ¶¶ 11, 12) Allen explained she had taken a few pills and showed Nordberg the prescription bottle. (Id. ¶¶ 13, 14) After learning Allen had just been in an accident where she knocked over a small tree, Nordberg arrested Allen for fleeing the scene of a property damage accident. (Id. ¶¶ 22-26) Also believing Allen was under the influence, he requested a DUI officer, who turned out to be Officer Taylor, to help assess Allen. (Id. ¶¶ 27-30) Upon arriving, Taylor noticed Allen's speech was slurred and somewhat "thick," her eyes reacted poorly to light, and she was incoherent. (Id. ¶ 37) When Taylor asked Allen to step out of her car, Allen had some trouble standing and walking. (Id. ¶¶ 40-42) She also told Taylor she had been taking a drug by the name of "Soma." (Id. ¶ 44) Taylor then arrested Allen for driving under the influence of drugs. (Id. ¶ 45)

Taylor subsequently drove Allen to the Hospital and asked her if she would submit to a urinalysis for court purposes. (Id. ¶¶ 46-47) Allen refused but did sign a consent form to be treated. (Id. ¶ 49) Dr. Arthur Proust, Allen's emergency room physician, noted Allen was intermittently awake and asleep, sometimes requiring verbal stimulation to open her eyes, while at other times she was aggressive and uncooperative; also her speech was slurred and she was unable or refused to answer questions. (Id. ¶¶ 50, 55, 60, 61) Dr. Proust also knew Allen had taken

Soma and observed some of the medication was missing and that it was not even prescribed for her. (Id. ¶ 59) Dr. Proust was concerned Allen had possibly taken more medication than she would either admit to or recall. (Id. ¶ 60) Further compounding the situation was that Soma is a muscle relaxant and, if Allen had taken a higher than prescribed dosage, it could lead to fatal consequences, such as her becoming so obtunded or unconscious that she could suffocate on her own aspiration and die. (Id. ¶¶ 63-64) For all these reasons, Dr. Proust determined it was necessary to perform a drug screen, alcohol level test, blood tests, and urinalysis. (Id. ¶¶ 61, 67; Allen LR 56.1(a) ¶¶ 8, 9)

Allen, however, refused to cooperate with the proposed treatment. (City LR 56.1(a) ¶ 56) But because of Allen's somewhat altered state, Dr. Proust decided Allen was not competent to render meaningful decisions about whether to participate in her own medical care. (Id. ¶ 58) Hospital staff then involuntarily drew blood and urine from Allen. (Id. ¶ 82)

In the meantime, Officer Taylor called her supervisor, Officer Bruce Scott. (Id. ¶ 73) She explained to Scott that the Hospital planned on taking urine and blood samples from Allen, even though she had refused to voluntarily give one to Taylor, and asked Scott how to proceed. (Id. ¶ 76) Taylor told her to let the Hospital staff treat Allen as they saw fit as they were acting on their own accord and not at the direction of the police department. (Id. ¶ 79) In Count I, Allen claims the City,

-4-

Taylor, and Scott should be held liable for allowing the Hospital defendants to forcibly take her blood and urine despite her lack of consent.

### III. **ANALYSIS**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Rizzo v. Sheahan, 266 F.3d 705, 711 (7th Cir. 2001). With cross-motions for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in favor of the party against whom the motion under consideration is made. See O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2001). However, only when a reasonable jury could return a verdict for such a party, based on the record as a whole, will there be a "genuine issue for trial." See Chavez v. Illinois State Police, 251 F.3d 612, 635 (7th Cir. 2001).

#### A. **Section 1983 (Count I)**

##### 1. **The City**

To establish the City violated her rights under § 1983 and the doctrine articulated in Monell v. Department of Social Services, 436 U.S. 658 (1978), Allen must show one of the

following: (1) the City had an express policy that, when enforced, caused a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) her constitutional injury was caused by a person with final policy-making authority. See Billings v. Madison Metro. Sch. Dist., 259 F.3d 807, 817 (7th Cir. 2001). Though not entirely clear, it appears Allen is relying on either the first or second theories. Yet the only evidence she offers in support of her claim against the City is a lone statement from Officer Taylor that the Rockford Police Department has a policy and procedure requiring officers who intend to request blood or urine samples from an arrestee to transport the arrestee to a local hospital before asking for the arrestee's consent. (Allen LR 56.1(a) ¶ 4) Because Taylor admitted she was following this procedure when she drove Allen to the Hospital, Allen claims this sufficiently proves a policy or custom under Monell. In the court's opinion, it does not.

First, Allen has done nothing to link this policy with the City or the City's policymakers. Officer Taylor specifically testified the policy she spoke of was the policy of the *Rockford Police Department*. (Allen LR 56.1(a) ¶ 4; Pl. Exh. B, Transcripts of proceedings, p. 15) In other words, Allen has shown no more than a policy or custom of the Rockford Police

Department; nowhere has she argued this is a policy of the City or that the City's policymakers were even aware of such a policy. See Latuszkin v. City of Chicago, 250 F.3d 502, 505 (7th Cir. 2001); see also Gernetzke v. Kenosha Unified Sch. Dist. No. 1, 274 F.3d 464, 468 (7th Cir. 2001) (school district itself must be "directly responsible" for the constitutional deprivation). For that matter, Allen does not even suggest, let alone provide evidence, that the City's policymakers delegated the authority to the Rockford Police Department to enact this policy. See Gernetzke, 274 F.3d at 469. On the minimal record before the court, the most that can be said of the procedure to transport arrestees to a hospital before asking their consent to give a blood or urine sample is that it is the policy of the Rockford Police Department, not the City. And "[w]ithout a link between the City and the alleged policy, no claim for municipal liability can survive." Latuszkin, 250 F.3d at 505.

But even assuming the City could be held responsible for the policy Taylor testified about, Allen has still failed to establish a "direct causal link" between that policy and Allen's alleged constitutional injury. See Board of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997); Lanigan v. Village of E. Hazel Crest, 110 F.3d 467, 479 (7th Cir. 1997) (quoting City of Canton v. Harris, 489 U.S. 378, 385 (1989)). It is true the policy of transporting arrestees to the hospital may have indirectly contributed to Allen's injury. As Allen herself puts it, it was

this policy, "*coupled with the failure to protect*[, which] caused the forced treatment." (Pl. Resp., p. 3) (emphasis added). But even this understates the matter. The causal link is a few more steps removed than that: if Taylor hadn't taken Allen to the Hospital pursuant to the policy, then Dr. Proust wouldn't have examined her, and then he wouldn't have recommended she undergo a drug screen to treat her, and then she wouldn't have been put in the position of refusing his proposed treatment, and then the Hospital staff wouldn't have drawn her blood and urine against her will, and then, finally, Taylor wouldn't have allegedly failed to protect Allen from the forced medical treatment. This is simply too tenuous of a connection to impose liability against the City. As far as the City is concerned, what directly caused Allen to be treated against her will was the failure of Taylor and Scott to step in and protect her when they knew she had refused treatment, not the policy of transporting arrestees to the hospital. The court, therefore, dismisses the § 1983 claims against the City and the officers in their official capacities.[2]

---

[2] Allen also asks in conclusory fashion that, if her "policy or custom" argument fails, she should be allowed to proceed under the theory that the City failed to adequately train Taylor and Scott. (Pl. Resp., p. 3) The court denies this request. Allen is now on her second-amended complaint, which, it should be noted, was filed *after* defendants had already filed their motions for summary judgment. Moreover, Allen offers absolutely no evidence in support of her new failure-to-train theory and does not even try to explain how this theory would help her case against the City. (As explained *infra*, Taylor and Scott's conduct was perfectly reasonable and the court does not see how more training could have helped.) If Allen wanted to argue her failure-to-train theory, her chance to do so was now.

-8-

## 2. Taylor and Scott

Because Officers Taylor and Scott have raised the defense of qualified immunity, the court engages in a two-step inquiry. First, it considers the "threshold question" of whether, taking the facts in the light most favorable to Allen, Taylor and Scott's conduct violated a constitutional right of Allen's. See Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001). If such a violation could be made out on a favorable view of the evidence, then the next, sequential step is to ask whether the constitutional right at issue was clearly established, such that a reasonable official would understand that what he was doing violated that right. See id.; Morrell v. Mock, 270 F.3d 1090, 1094 (7th Cir. 2001). Although it is an affirmative defense, the burden of defeating the assertion of qualified immunity rests with Allen. See Sparing v. Village of Olympia Fields, 266 F.3d 684, 688 (7th Cir. 2001).

All parties (and the court) agree Allen should be considered a pretrial detainee while she was at the Hospital and, as such, any constitutional violation she may have suffered should be analyzed under the Due Process Clause of the Fourteenth Amendment. See Tesch v. County of Green Lake, 157 F.3d 465, 472-73 (7th Cir. 1998). As for the constitutional violation itself,

---

See Schacht v. Wisconsin Dep't of Corrs., 175 F.3d 497, 503-04 (7th Cir. 1997) (noting summary judgment is the "'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events"), rev'd on other grounds, 524 U.S. 381 (1998).

Allen essentially argues Taylor and Scott failed to protect her while in Taylor's custody when they allowed Dr. Proust and the rest of the Hospital staff forcibly take her blood and urine despite Taylor and Scott knowing Allen had not consented to these procedures. She develops this argument from a couple different lines of cases.

In DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989), the Supreme Court explained that the Due Process Clause generally does not impose an affirmative obligation upon a state to protect its citizens against "private violence" – the deprivation of life, liberty, or property by private actors. See id. at 195-97. Subsequent case law, however, has created two exceptions to this general rule from language found in DeShaney. See Monfils v. Taylor, 165 F.3d 511, 516 (7th Cir. 1998), cert. denied, 528 U.S. 810 (1999). The first is where the state creates a "special relationship" with the victimized individual, such that the state assumes a duty to provide "some minimum level of well-being and safety." Collignon v. Milwaukee County, 163 F.3d 982, 987 (7th Cir. 1998). This "special relationship" arises in custodial settings when the state deprives a person of her ability to care for herself by incarcerating her, detaining her, or involuntarily committing her, and thereby cutting off alternate avenues of aid. See Kitzman-Kelly v. Warner, 203 F.3d 454, 458 (7th Cir. 2000); Monfils, 165 F.3d at 516; Collignon, 163 F.3d at 987; Tesch, 157

F.3d at 472-73 (applying "special relationship" exception to pretrial detainee); Stevens v. City of Green Bay, 105 F.3d 1169, 1174 (7th Cir. 1997). The second exception applies when the state places the individual in a position of danger she otherwise would not have faced. See Monfils, 165 F.3d at 516; Collignon, 163 F.3d at 987; Stevens, 105 F.3d at 1174.

Following up on the first exception, Allen argues she can establish a constitutional violation by showing Taylor and Scott "were aware of a substantial risk of serious injury to [her] but nevertheless failed to take appropriate steps to protect [her] from a known danger." Payne v. Churchich, 161 F.3d 1030, 1041 (7th Cir. 1998), cert. denied, 527 U.S. 1004 (1999). Specifically, she claims both Taylor and Scott were made aware of the fact that the Hospital staff was planning on committing a battery against her – by performing "non-consensual, diagnostic treatment" on her – but did nothing to stop it. To back up this theory, Allen also cites Cruzan v. Director, Missouri Department of Health, 497 U.S. 261 (1990), and Washington v. Harper, 494 U.S. 210 (1990), for the proposition that she had a due process right to refuse unwanted medical treatment.

Allen's claim under the "special relationship" exception – that Taylor and Scott failed to protect her by letting the Hospital commit a battery against her – borders on the frivolous. It is true a *competent* individual generally has a protected liberty interest in refusing unwanted medical treatment.

-11-

See Cruzan, 497 U.S. at 278. But Dr. Proust, a licensed physician who is board certified in emergency medicine (City LR 56.1(a) ¶ 51), determined Allen was *not* competent to make her own decisions and determined in his professional medical opinion it was necessary to perform a drug screen on Allen to treat her - facts Allen does not at all contest. Because Allen refused and would not cooperate, it became necessary to forcibly draw Allen's blood and urine. Taylor and Scott did the most sensible thing under the circumstances: they let the Hospital staff do what was in Allen's best interests to treat her in her altered state. Under Allen's theory, though, Officers Taylor and Scott, with no medical training beyond basic first aid and CPR (Id. ¶¶ 72, 75), should have overrode a board certified emergency physician, told him he was wrong about Allen not being competent to refuse medical treatment (or told him he should not perform the drug screen because Allen had refused, despite his professional opinion that she was not competent and the drug screen was necessary to treat her), and stopped the Hospital staff from taking Allen's blood and urine. Allen cannot seriously (and does not) suggest it was within the province of two police officers to tell a licensed physician how to treat his patient or even to reasonably doubt whether Dr. Proust's proposed treatment was appropriate. It is exactly because Taylor and Scott did *not* interfere that they are not liable for cutting off alternate avenues of aid, failing to provide services to Allen to save her

from injury, or otherwise failing to protect her, not the other way around.

Allen also argues her case falls under the state-created danger exception. By following the Rockford Police Department's policy of transporting arrestees to the hospital, Allen claims Taylor placed her in a position of danger she otherwise would not have faced. According to Allen, if not for this policy, she would not have been at the Hospital and subjected to the alleged battery. This theory is equally without merit.

It must remembered, after all, that Taylor took Allen to a *hospital*. It is not as if Taylor arrested her and then dropped her off in the wilderness, see Collignon, 163 F.3d at 987, or let her wander the streets in her altered state, cf. Reed v. Gardner, 986 F.2d 1122, 1124-25 (7th Cir.), cert. denied, 510 U.S. 947 (1993); White v. Rochford, 592 F.2d 381, 383-84 (7th Cir. 1979). More to the point, it can hardly be said that taking Allen to a hospital and allowing the staff there to treat her created, or substantially contributed to the creation of, a danger or rendered her more vulnerable to a danger than she otherwise would have been. See Reed, 986 F.2d at 1126.

It is true the initial reason Taylor took Allen to the Hospital was to obtain a drug screen for court purposes. But that does not change the fact that Allen had just been in an accident where she ran into a tree on the side of the road, had driven off, was later seen driving on the wrong side of the road,

and was in an altered state because of some prescription medication that might not even have been hers. It is hard to think of a place that would have been *more* safe than a hospital for Allen to be at that point, or of any safer or more reasonable course of action for Taylor and Scott to follow than to let the Hospital staff treat Allen without butting in. In addition, once Allen refused to submit to a drug screen for court purposes, Taylor dropped the matter. As Allen herself admits, the drug screen Dr. Proust recommended was for treatment purposes, and there is no suggestion Taylor simply allowed Dr. Proust to perform the drug screen against Allen's will so Taylor could then use the results for court purposes. The court thus finds the facts of this case simply do not establish a violation of Allen's due process rights under either of the DeShaney exceptions.[3]

Alternatively, even assuming Allen has somehow established a constitutional violation, the court finds Taylor and Scott are nevertheless entitled to qualified immunity because the alleged right at issue was not "clearly established" as of July 1999. To find that a constitutional right was "clearly established" at the time of the alleged violation, the right must be "particularized" and the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing

---

[3] The fact that the individual officers are not liable on the underlying substantive claim also serves as an alternative basis for not imposing liability against the City. See Treece v. Hochstetler, 213 F.3d 360, 364 (7th Cir.), cert. denied, 531 U.S. 957 (2000).

-14-

violates that right." Alvarado v. Litscher, 267 F.3d 648, 652 (7th Cir. 2001) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). In other words, the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. See Wilson v. Layne, 526 U.S. 603, 615 (1999). This requires the court to consider the officer's actions in light of all the particular circumstances the officer faced at the time and then compare them with the then-existing law. See Ulichny v. Merton Cmty. Sch. Dist., 249 F.3d 686, 706 (7th Cir. 2001). Although Allen need not point to a case identical to her own, she must show that, "in light of pre-existing law," a reasonable defendant would have known that his actions were unlawful. See Alvarado, 267 F.3d at 652; see also Billings, 259 F.3d at 816.

On this point, the whole of Allen's analysis consists of a few case citations and the following remark: "Clearly, the right to refuse unwanted medical treatment is well established." (Pl. Resp., p. 5) True enough, but this glib statement does not even come close to defining the constitutional violation at the appropriate level of specificity. Although not cited by Allen, there are certainly plenty of cases holding that police officers may be liable for being deliberately indifferent to a pretrial detainee's serious injury or medical needs, and that such deliberate indifference can arise either by failing to provide prompt treatment for serious medical needs or by intentionally

-15-

interfering with treatment once prescribed. See, e.g., Chapman v. Keltner, 241 F.3d 842, 845-46 (7th Cir. 2001) (citations omitted); Rapier v. Harris, 172 F.3d 999, 1006 (7th Cir. 1999). And had Allen argued it, the court *might* have been willing to entertain the idea that an officer could be liable for idly standing by and doing nothing to protect a pretrial detainee from unwanted medical treatment when the officer is aware the detainee has competently refused treatment. But that is not this case. What Allen is really proposing is the right of a pretrial detainee to have an arresting police officer prevent emergency medical care deemed necessary for treatment purposes by the attending physician, after the physician has determined the detainee is incompetent to make her own medical decisions and decided in his own professional opinion what the appropriate care should be. Allen of course has not pointed out, and the court could not find in its own research, any cases that even arguably support such a right - most likely because it would be absolutely absurd. By deferring to Dr. Proust and allowing him to perform whatever tests he felt were necessary to treat Allen, Officers Taylor and Scott did not violate any "clearly established" constitutional right of Allen's.

Because the court finds the facts of this case do not establish a violation of Allen's constitutional rights and the particularized right at issue was not "clearly established," Officers Taylor and Scott are entitled to qualified immunity.

## B. State Law Claims (Counts III - V)

With Count I (and by necessary implication Count II) out of the picture, all that remains in this case are Allen's pendent state tort claims for battery against all defendants (Count III), intentional infliction of emotional distress against all defendants (Count IV), and malicious prosecution against the City, Neal, and Mosny (Count V). Because the court is dismissing the only claims over which it has original jurisdiction, it declines to exercise its supplemental jurisdiction over Counts III - V. See 28 U.S.C. § 1367(c)(2); Contreras v. Suncast Corp., 237 F.3d 756, 766 (7th Cir.) (relinquishing pendent jurisdiction once federal claims drop out before trial is the norm, not the exception), cert. denied, 122 S. Ct. 62 (2001); see also Sullivan v. Conway, 157 F.3d 1092, 1095 (7th Cir. 1998).

## IV. CONCLUSION

For the reasons stated above, the court grants the City defendants' motion for summary judgment as to Count I and denies Allen's cross-motion for partial summary judgment as to Count I. Because the court declines to exercise supplemental jurisdiction over Allen's remaining state law claims, the remainder of the City defendants' and Allen's motions for summary judgment are denied as moot, as is the Hospital defendants' motion for summary judgment. This case is therefore dismissed in its entirety, Counts I and II being dismissed with prejudice and Counts III - V without prejudice.

E N T E R:

_____
PHILIP G. REINHARD, JUDGE
UNITED STATES DISTRICT COURT

DATED: March 15, 2002

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Western Division

The Estate of Darlene Allen

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 99 C 50324

City of Rockford, et al.

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that plaintiff's motion for partial summary judgment as to Count I is denied but the motion for summary judgment brought by defendants City of Rockford, Taylor, and Scott is granted as to Counts I and II. The remainder of these parties' motions for summary judgment are denied as moot, as is the motion for summary judgment brought by defendants Rockford Health System, et al. This case is dismissed in its entirety, Counts I and II being dismissed with prejudice and Counts III - V without prejudice.

Michael W. Dobbins, Clerk of Court

Susan M. Wessman, Deputy Clerk

Date: 3/15/2002